## MELTZER v. BALTIMORE & O. R. CO.
### No. 814.

District Court, E. D. Pennsylvania.

Jan. 28, 1941.

Joseph S. Kleinbard, of Philadelphia, Pa., for plaintiff.

Howard Burtt, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a suit to recover damages for injuries to 127 carloads of watermelons delivered by the defendant railroad company to the plaintiff, the consignee, at Philadelphia.

In the case of Meltzer v. Pennsylvania Railroad Company, 29 F.Supp. 840, 842, 841 (herein referred to as the first Meltzer case, involving a number of shipments which had nothing to do with those in this case), this court ruled that it was proper to accept the plaintiff's evidence of prices obtained by him, as prima facie evidence of his "full actual loss." The con-

signee's full actual loss ordinarily is established by the difference between the fair market value of the goods undamaged and their fair market value as delivered in damaged condition, and it should be clearly understood that no new measure of damages, differing from the ordinary one, was adopted in that case.

The opinion in the first Meltzer case had to do entirely with the kind of evidence which would be accepted. Because of the method of selling melons from the railroad cars, which existed in Philadelphia, and which was known to the carrier, damaged melons were never segregated and sold separately, and consequently, there being no market, it was practically impossible to produce direct evidence of their market value. The defendant contended that, for this reason, the plaintiff could not recover anything, but I felt that to deny all relief would be grossly unjust, and that the difference between the sound value of the melons and their value as damaged could be arrived at with approximate accuracy by starting with the plaintiff's money loss on his total sales—that is, the difference between the fair market value on date of arrival of sound melons and the price which he actually received—and then making certain adjustments in order to reach approximate accuracy. For example, there were some cars as to which the money loss exceeded the total market value of all the damaged melons had they been in sound condition. On the theory that the plaintiff could not recover more than the latter figure, that figure fixed an upper limit for the damages allowable on any particular shipment.

One argument which the defendant made against this method of arriving at the damages was that, in many cases, the plaintiff's money loss was increased by the facts that buyers usually based their "run-of-the-car" bids for the melons, partially at least, on the general appearance of the load, and that cars delivered in a jumbled and disorderly condition brought lower figures. The defendant thought that this made the price-loss an unsafe starting point from which to reach the actual loss according to the ordinary standard. I felt, however, that it was a condition which directly and logically affected the plaintiff's money loss, and, since it was due to carrier's negligence, the defendant could not urge it as a ground for impeaching the only evidence which the plaintiff could produce to prove his case. This was all that I had in mind in that part of the opinion which the plaintiff now relies on.

From what was said in the opinion, the plaintiff argues that I should add to the ordinary damages some amount representing the part of his money loss arising from the disorderly condition of some of the loads. It does not appear, however, that his whole money loss, over and above the difference between undamaged and damaged value, was due to this factor, and I should have to guess how much, if any, of it was. Without passing on the question whether the amount of loss from the appearance of the loads is an allowable item if proved, it must be disregarded in this case because not proved. The whole discussion of this point in the first Meltzer case was merely to show the propriety of using the money loss as a basis for finding the full actual loss or damage.

In the present case, an entirely different situation is presented. The parties have stipulated that certain figures, which they call "salvage," represent the fair market value of the damaged melons, had they been sold separately. We need not be concerned with the manner in which these figures have been arrived at. The point is that it gives the court a basis upon which the ordinary rule of determining full actual loss by subtracting damaged value from sound value can be directly applied. It entirely eliminates the necessity for the method of approach adopted in the first Meltzer case, and the consideration of the kind of evidence which was there used as a basis.

However, as stated, it must be held that, in no event, can allowance be made which would exceed the total sound market value of all the damaged melons.

In the present case there are two elements which must be deducted from the loss as arrived at by subtracting damaged value (as stipulated) from sound value. They are, first, what has been referred to as "tolerance"—explained in Bronstein v. Baltimore & O. R. Co., D.C., 29 F.Supp. 837, and, second, cinder damage, also explained in that case.

With the foregoing principles in mind, I make the following fact findings:

1. The plaintiff has suffered damage due to injury of certain melons in each of the cars in suit.

2. Injury to the melons was caused by carrier's negligence.

3. The amount of the plaintiff's damages is $4,000, with interest.